[No. 49798–2. En Banc. January 10, 1985.]

FRANK COX, ET AL, *Respondents*, v. KEVIN T. HELENIUS, ET AL, *Defendants*, OLYMPIC PROPERTIES, LTD., *Appellant*.

*Diamond & Sylvester,* by *John T. Petrie,* and *Trethe-wey, Brink, Rossi, Todd & Clayton,* by *Daniel Brink,* for appellant.

*David A. Leen* and *Leen & Moore,* for respondents.

UTTER, J.—A trustee in a deed of trust foreclosure action was made aware of an action for damages and reconveyance of the deed of trust pending against the grantee of the deed of trust. He was also aware that the grantors believed their action had halted foreclosure proceedings. Nevertheless, he

initiated foreclosure proceedings and held a trustee's sale in which the grantor's home, with an equity of at least $100,000 existing in the grantor, was sold for $11,784. Olympic Properties, Ltd., appeals from summary judgment entered by the trial court against Helenius as trustee, which set aside this deed of trust foreclosure sale and dismissed an unlawful detainer action.

We hold that the suit brought by the grantor prevented the trustee's initiation of foreclosure, making the sale void. We further hold that the trustee breached his duties.

The theme of the transaction attempted parallels an action heard by Judge J. E. Wyche, a member of Washington's early judiciary. When a jury returned a verdict in a suit disputing title over 100 acres of ranch land, he threatened to set aside their verdict, stating "While I am a judge, it takes 13 men to steal a ranch." W. Airey, A History of the Constitution and Government of Washington Territory, at 312 (1945) (unpublished Ph.D. thesis available in the Washington State Library, Olympia, Washington).

The deed of trust sale in question today involves not a pioneer ranch but a swimming pool and the owner's home. In November 1981, Frank and Kathleen Cox signed a 120–month installment contract with San Juan Pool Corporation for the purchase and installation of a $9,985 pool at their home on Magnolia Boulevard in Seattle. To secure payment, the Coxes granted San Juan a security interest in their home in the form of a deed of trust.

In April 1982, shortly after installation was completed, the Coxes attempted to use the "backflush" to clean the pool. The pipes installed by San Juan collapsed, backing up sewage into the Cox residence. Although the Coxes notified San Juan immediately, the company failed to take any action to repair the pipes. The Coxes, who were without running water for 8 days due to the sewage backup, spent $4,004 to clean up and repair the sewer lines.

The Coxes hired an attorney to represent them in an action against San Juan. On June 8, 1982, she sent a letter to San Juan and its collection agency detailing the damage

to the home and its cost to the Coxes. Because the Coxes' alleged damages exceeded the balance due on the note secured by the deed of trust, she requested that San Juan reconvey the deed of trust to the Coxes and pay any further damages. She instructed the Coxes to withhold payments on the note until the matter was resolved.

Kevin Helenius, the trustee under the deed of trust and attorney for San Juan, then sent the Coxes a letter notifying them they were in arrears on the note. The letter added that unless payments were received within 10 days, San Juan would commence nonjudicial foreclosure.

In response, the Coxes filed a complaint for damages and reconveyance of the deed of trust. The complaint was initially served on July 22, 1982 upon the Contractor's Registration Section of the Department of Labor and Industries, the statutory agent authorized to receive service of process upon the bonding company for San Juan Pool Corporation. Likely unaware of the Coxes' action, Helenius sent the Coxes a notice of default on July 30, 1982. On August 12, upon learning that the complaint had been served on San Juan, the Coxes' attorney sent a copy to Helenius. The summons and complaint were then filed in King County Superior Court on August 27, 1982. No notice of lis pendens was recorded. That same day Helenius filed a notice of appearance for San Juan.

On September 8, 1982, Helenius sent a notice of sale and foreclosure to the Coxes. Helenius acknowledged in his deposition that he was aware of the suit for damages at this time. The Coxes amended their complaint for damages on September 20, 1982 to include a request for an injunction restraining the trustee's sale set for December 10, 1982.

On October 19, 1982, after a motion hearing on the damage suit, Helenius and the Coxes' attorney briefly discussed the Coxes' lawsuit. The two attorneys discussed settling the case or submitting the damage claim to arbitration. The Coxes' attorney believed Helenius would not hold the sale.

The sale, however, took place as scheduled on December 10, 1982. The only persons present at the sale were

Helenius, his secretary, Karen Goerz, and Bertil Granberg, president of Olympic Properties, Ltd. Granberg, formerly an attorney, was disbarred and is no longer practicing. For the past 5 years he has worked full time buying and selling real estate. Goerz had been authorized to bid on San Juan's behalf by Robert Stark, its president. Goerz bid $11,783, the amount San Juan had calculated as due on the note. Granberg bid an additional dollar. Helenius then issued a trustee deed to Olympic Properties, Ltd. At the time of the sale, the residence's worth was in the range of $200,000 to $300,000.

I

■ Washington's deed of trust act should be construed to further three basic objectives. *See* Comment, *Court Actions Contesting the Nonjudicial Foreclosure of Deeds of Trust in Washington,* 59 Wash. L. Rev. 323, 330 (1984). First, the nonjudicial foreclosure process should remain efficient and inexpensive. *Peoples Nat'l Bank v. Ostrander,* 6 Wn. App. 28, 491 P.2d 1058 (1971). Second, the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure. Third, the process should promote the stability of land titles.

The act contains several safeguards to ensure that the nonjudicial foreclosure process is fair and free from surprise. Prior to initiating foreclosure, it is required that a default has occurred, RCW 61.24.030(3), and that no action is pending on an obligation secured by the deed of trust, RCW 61.24.030(4). Only after giving 30 days' notice and an opportunity to cure, may the trustee begin the foreclosure process. RCW 61.24.030(6).

If the grantor chooses not to cure, the grantor may take one or more of the following actions. The grantor may contest the default, RCW 61.24.030(6)(j), RCW 61.24.040(2); restrain the sale, RCW 61.24.130; or contest the sale, RCW 61.24.040(2).

■ We are required, when possible, to give effect to every word, clause and sentence of a statute. *International*

*Paper Co. v. Department of Rev.,* 92 Wn.2d 277, 281, 595 P.2d 1310 (1979), *citing* 2A C. Sands, *Statutory Construction* § 46.06, at 63 (4th ed. 1973). No part should be deemed inoperative or superfluous unless the result of obvious mistake or error. 2A C. Sands, *supra.*

██ Using these rules of statutory construction, we conclude that an action contesting the default, filed after notice of sale and foreclosure has been received, does not have the effect of restraining the sale. RCW 61.24.130 sets forth the only means by which a grantor may preclude a sale once foreclosure has begun with receipt of the notice of sale and foreclosure. That section allows the superior court to issue a restraining order or injunction to halt a sale on any proper ground. The Coxes failed to apply for an order restraining the sale, although they requested that relief in their amended complaint. Here, however, the trial judge properly determined that the lawsuit the Coxes filed after receiving the notice of default but prior to initiation of foreclosure constituted an action on the obligation. Therefore, one of the statutory requisites to nonjudicial foreclosure was not satisfied.

In some situations, a trustee may be unaware that an action on the obligation exists at the time foreclosure proceedings are initiated. Helenius, however, had actual notice of the action underlying the debt. He filed a notice of appearance in the case for the defendant beneficiary on the same day it was filed. He later represented the beneficiary at a motion hearing.

## II

Even if the statutory requisites to foreclosure had been satisfied and the Coxes had failed to properly restrain the sale, this trustee's actions, along with the grossly inadequate purchase price, would result in a void sale. *See Lovejoy v. Americus,* 111 Wash. 571, 574, 191 P. 790 (1920); *Miebach v. Colasurdo,* 102 Wn.2d 170, 685 P.2d 1074 (1984). Because the deed of trust foreclosure process is conducted without review or confirmation by a court, the

fiduciary duty imposed upon the trustee is exceedingly high.

■ Washington courts do not require a trustee to make sure that a grantor is protecting his or her own interest. However, a trustee of a deed of trust is a fiduciary for both the mortgagee and mortgagor and must act impartially between them. G. Osborne, G. Nelson & D. Whitman, *Real Estate Finance Law* § 7.21 (1979).

The trustee is bound by his office to present the sale under every possible advantage to the debtor as well as to the creditor. He is bound to use not only good faith but also every requisite degree of diligence in conducting the sale and to attend equally to the interest of the debtor and creditor alike.

*Swindell v. Overton,* 310 N.C. 707, 712, 314 S.E.2d 512 (1984). *See Blodgett v. Martsch,* 590 P.2d 298, 302 (Utah 1978) ("duty of the trustee under a trust deed is . . . to treat the trustor fairly and in accordance with a high punctilio of honor"); *McHugh v. Church,* 583 P.2d 210, 213 (Alaska 1978); *Spires v. Edgar,* 513 S.W.2d 372 (Mo. 1974); *Whitlow v. Mountain Trust Bank,* 215 Va. 149, 207 S.E.2d 837 (1974); *Woodworth v. Redwood Empire Sav. & Loan Ass'n,* 22 Cal. App. 3d 347, 99 Cal. Rptr. 373 (1971).

We agree with a recent Alaska decision which emphasizes that a trustee's management responsibilities under a deed of trust are less extensive than those of trustees in other fiduciary settings. *McHugh,* 583 P.2d at 214. *See also S & G Inv. Inc. v. Home Fed. Sav. & Loan Ass'n,* 505 F.2d 370, 377 n.21 (D.C. Cir. 1974). The trustee of a deed of trust is not required to obtain the best possible price for the trust property. *Cf., e.g., Allard v. Pacific Nat'l Bank,* 99 Wn.2d 394, 406, 663 P.2d 104 (1983). Nonetheless, the trustee must "take reasonable and appropriate steps to avoid sacrifice of the debtor's property and his interest." *McHugh,* 583 P.2d at 214.

■ Furthermore, after a trustee undertakes a course of conduct reasonably calculated to instill a sense of reliance thereon by the grantor, that course of conduct may not be

abandoned without notice to the grantor. *Lupertino v. Carbahal,* 35 Cal. App. 3d 742, 111 Cal. Rptr. 112, 116 (1973). Helenius should have either informed the Coxes' attorney that, in his opinion, she had failed to properly restrain the sale or have delayed foreclosure until resolution of the underlying dispute, especially since the extensive damage to the Coxes' property put the very issue of default into question. RCW 61.24.040(6) allows a trustee to continue a sale "for any cause he deems advantageous".

█ It appears that the dual responsibility of trustee and attorney for the beneficiary precipitated at least some of the trustee's breaches. Although the dual role this trustee had troubles us, the Legislature specifically amended the statute in 1975 to allow an employee, agent or subsidiary of a beneficiary to also be a trustee. *See* Laws of 1975, 1st Ex. Sess., ch. 129, § 2. The amendment furthers the general intent of the act that nonjudicial foreclosure be efficient and inexpensive, and in the ordinary case would present no problem. However, the statute may not allow attorneys to do that which the Code of Professional Responsibility prohibits. The spirit of CPR DR 5–105(B) would seem to condemn action of the nature that occurred here. Where an actual conflict of interest arises, the person serving as trustee and beneficiary should prevent a breach by transferring one role to another person. *See, e.g., Mintener v. Michigan Nat'l Bank,* 117 Mich. App. 633, 324 N.W.2d 110 (1982).

### III

Prejudgment interest is allowed for liquidated claims. *Prier v. Refrigeration Eng'g Co.,* 74 Wn.2d 25, 32, 442 P.2d 621 (1968). Because the amount Olympic paid for the Cox property is undisputed, the claim is considered liquidated and prejudgment interest is allowed.

WILLIAMS, C.J., and BRACHTENBACH, DOLLIVER, DORE, DIMMICK, PEARSON, and ANDERSEN, JJ., concur.