130 P.3d 908 (2006)
William UDALL, an individual, Clete Bremner, and individual, and Gregory D. Sargent, an individual, Respondents,
v.
T.D. ESCROW SERVICES, INC. d/b/a T.D. Service Company, a Washington Corporation, U.S. Bancorp f/k/a Firstar Bank, NA, a Washington Corporation, and T.D. Service Financial Corporation, a California Corporation, Appellants.
No. 32963-8-II.
Court of Appeals of Washington, Division 2.
March 28, 2006.
*909 David A. Leen, Leen & O'Sullivan PLLC, Seattle, WA, for Appellants.
Yvonne Marie Mattson, Attorney at Law, Tacoma, WA, for Respondents.
HUNT, J.
¶ 1 T.D. Escrow (TD) appeals the trial court's grant of summary judgment to William Udall in a quiet title action arising from a statutory non-judicial foreclosure sale of property for which TD was the trustee. Udall offered the winning bid at a price the auctioneer had mistakenly set $100,000 lower than TD had authorized. TD refused to deliver the deed to Udall and to record it. TD argues that the trial court erred in denying its motion for summary judgment and in granting summary judgment to Udall, because the deed was neither delivered nor recorded as required to complete the purely statutory sale under RCW 61.24.050. Udall counters that summary judgment was proper under common law breach-of-contract principles and, therefore, TD could not rescind the sale based on a unilateral mistake in the auction price.
¶ 2 We hold that (1) RCW 61.24.050, not the common law, applies to this statutory non-judicial foreclosure sale; (2) the sale was not completed under the strict terms of the statute; and (3) therefore, Udall was not entitled to the property. Accordingly, we reverse the trial court's grant of summary judgment to Udall and grant summary judgment to TD.

*910 FACTS
¶ 3 The parties do not dispute the material facts. When William Brown failed to make home mortgage payments to his lender, U.S. Bank, U.S. Bank's trustee, T.D. Escrow (TD), instituted foreclosure proceedings. TD hired ABC Messenger Service to sell the property at a public auction. On September 19, 2003, TD filed a notice of trustee sale. The notice stated that Brown was in arrears for $137,197.06 in loan obligations and $10,834.18 for other charges and fees.
¶ 4 On April 16, 2004, TD directed ABC to start the auction bidding at $159,422.20. But ABC started bidding at $59,421.20, and William Udall bid $59,422.20. ABC accepted Udall's bid and gave him a receipt for his purchase, which included the words "VESTING CANNOT BE ALTERED ONCE THE AUCTIONEER COMPLETES THIS RECEIPT!" Clerk's Papers (CP) at 35.
¶ 5 Consistent with its general practice after an auction sale and before issuing a deed, TD took time to verify the validity of the bid and the receipt of funds for the sale, to check for intervening bankruptcy filings, and to check other circumstances. This process led TD to discover the auctioneer's bidding-price mistake and, subsequently, to void the sale. Five days after the auction, on April 21, 2004, TD sent Udall a refund, explaining that the auctioneer had not been authorized to open the bidding at $59,421.20. Udall rejected the refund.
¶ 6 On June 3, 2003, Udall sued TD and U.S. Bank to quiet title; Udall also filed a lis pendens on the property. TD moved for summary judgment, to quash the lis pendens, and for attorney fees. Udall filed a cross motion for summary judgment. The trial court denied TD's motions and granted Udall's cross motion for summary judgment.
¶ 7 TD appeals.

ANALYSIS

I. STANDARD OF REVIEW
¶ 8 When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issue of material fact. CR 56(c). The court must consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. Wilson, 98 Wash.2d at 437, 656 P.2d 1030.

II. NON-JUDICIAL FORECLOSURE SALES
¶ 9 Udall argues that (1) RCW 61.24.050, the Deeds of Trust Act, is ambiguous; and (2) accordingly, courts must use the common law of contract to supplement the Deeds of Trust Act. He contends TD was obligated to deliver the deed to him because he had a valid contract with TD, which TD could not rescind based on its unilateral mistake.
¶ 10 Washington courts have yet to address whether the common law of contracts applies to nonjudicial foreclosure sales. Addressing this issue of first impression, we reject Udall's arguments and hold that Washington's Deeds of Trust Act, RCW 61.24.050, not the common law of contracts, controls non-judicial foreclosure sales pursued under this statute.

A. Deeds of Trust Act
¶ 11 Our Legislature enacted Washington's Deeds of Trust Act (Act) to supplement the time-consuming judicial foreclosure process. John A. Gose, The Trust Deed Act in Washington, 41 WASH. L.REV. 94, 95-96 (1966). The Act prescribes detailed procedures that the parties must follow in order for a trustee to sell property in a nonjudicial foreclosure sale at a public auction. See, e.g., RCW 61.24.010 and .040. Once these presale requirements are met, the property can be sold.
¶ 12 RCW 61.24.050 provides:
When delivered to the purchaser, the trustee's deed shall convey all of the right, title, and interest in the real and personal property sold at the trustee's sale which the grantor had or had the power to convey at the time of the execution of the deed of trust, and such as the grantor may have thereafter acquired. If the trustee *911 accepts a bid, then the trustee's sale is final as of the date and time of such acceptance if the trustee's deed is recorded within fifteen days thereafter. After a trustee's sale, no person shall have any right, by statute or otherwise, to redeem the property sold at the trustee's sale.
(Emphasis added.) The Act does not explain the meaning of "final" in the context of a "trustee's sale," whether the trustee has an obligation to deliver a deed, and, if so, when the delivery must occur. Therefore, we endeavor to interpret the Legislature's intent for these gaps.

B. Statutory Construction
¶ 13 When interpreting a statute, our primary objective is to ascertain and to carry out the Legislature's intent and purpose. Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles, 148 Wash.2d 224, 239, 59 P.3d 655 (2002). To determine legislative intent, we look first to the plain language of the statute. Fraternal Order, 148 Wash.2d at 239, 59 P.3d 655. If a statute is ambiguous, we use principles of statutory construction, legislative history, and relevant case law to provide guidance in construing a statute's meaning. State v. Roggenkamp, 153 Wash.2d 614, 621, 106 P.3d 196 (2005).
¶ 14 In addition, we must construe the Act to further three objectives. First, the statutory non-judicial foreclosure process should remain efficient and inexpensive. Second, it should provide an adequate opportunity for interested parties to prevent wrongful foreclosure. Third, it should promote the stability of land titles. Cox v. Helenius, 103 Wash.2d 383, 387, 693 P.2d 683 (1985). In addition, because nonjudicial foreclosures lack the judicial oversight inherent in judicial foreclosures, we strictly apply and interpret the Act in favor of the borrower. Koegel v. Prudential Mut. Sav. Bank, 51 Wash.App. 108, 111, 752 P.2d 385, review denied, 111 Wash.2d 1004 (1988).

C. "Final" Sale  Recording and Delivery
¶ 15 TD argues that a RCW 61.24.050 foreclosure sale is valid only if the deed is recorded and delivered. We agree that the deed must be delivered in order to convey real property rights under Washington's Deeds of Trust Act.

1. History
¶ 16 The pre-1998 version of RCW 61.24.050 provided:
The deed of the trustee, executed to the purchaser, shall convey the interest in the property which the grantor had or had the power to convey at the time of the execution by him of the deed of trust, and such as he may have thereafter acquired. After sale, as in this chapter provided, no person shall have any right by statute or otherwise to redeem from the deed of trust or from the sale.
RCW 61.24.050 (1996) (emphasis added). This pre-1998 version contained a number of ambiguities. For example, the term "executed" could mean "signed, done, given, performed, and delivered," or a combination of these acts. See BLACK'S LAW DICTIONARY 609 (8th ed.1999). Similar to the current version, this version of the Act did not establish when a foreclosure sale under the Act is completed, even though it uses the phrase "after sale."
¶ 17 Recognizing that nonjudicial foreclosure practice under the Act departed from strict statutory requirements, the Legislature sought to clarify the Act's ambiguities and requirements, including when a trustee's sale is final. S.B. REP. on Engrossed Substitute S.B. (ESSB) 6191, 55th Leg., Reg. Sess. (Wash.1998).[1] Accordingly, in 1998, the Legislature amended the Act to reflect then current practices. S.B. REP. on ESSB 6191. The amended Act read, in pertinent part, as follows:
When delivered to the purchaser, the trustee's deed shall convey all of the right, title.... If the trustee accepts a bid, then the trustee's sale is final as of the date and time of such acceptance if the trustee's *912 deed is recorded within fifteen days thereafter....
RCW 61.24.050 (emphasis added).
¶ 18 In this amended version, the Legislature separated delivery of the deed and finality of the sale into two distinct parts. The Legislature first changed the word "executed" to "delivery," which more narrowly defined when property rights are conveyed: "When delivered to the purchaser, the trustee's deed shall convey all of the right, title...." RCW 61.24.050 (emphasis added). According to the plain meaning of this sentence, a person acquires no rights to the property sold by non-judicial foreclosure until the deed is delivered. Thus, a foreclosure sale itself, including the acceptance of an auction bid, without delivery of the trustee's deed, conveys no property rights under the Act.
¶ 19 The Legislature then defined, in a separate sentence, when a sale under the Act is final: "If the trustee accepts a bid, then the trustee's sale is final as of the date and time of such acceptance if the trustee's deed is recorded within fifteen days thereafter...." RCW 61.24.050 (emphasis added). Here, "finality" refers only to establishing the date and finality of the sale, which become operative retrospectively only if the deed is recorded within 15 days after this final sale date.

2. Recording requirement
¶ 20 In amending the Act, the Legislature did not indicate that the purpose for requiring recording under RCW 61.24.050 differed from the general purpose for recording other documents under the Recording Act, RCW 65.08.[2] That general purpose is to place subsequent purchasers on notice of property's transfer from one owner to another,[3] not to convey rights in land to the purchaser. See RCW 65.08.070; Hoffman v. Graaf, 179 Wash. 431, 439, 38 P.2d 236 (1934).
¶ 21 A final sale date, established through recording, serves various purposes of the Act unrelated to conveyance. For example, a sale date is necessary to establish title priority and superiority against those who later record an interest in the property after the sale (e.g., bankruptcy filings). The final sale date also serves as the point after which no other person can redeem an interest in the property, thereby allowing the purchaser to obtain clear title. RCW 61.24.050. The final sale date further denotes the point at which a purchaser can possess the property or bring an unlawful detainer action against an unauthorized person living on the property. RCW 61.24.060.
¶ 22 We reiterate that we must strictly apply and interpret the Act in favor of the borrower, which in this case is Williams, on whose behalf the bank instituted foreclosure procedures to satisfy his debt. See Koegel, 51 Wash.App. at 111, 752 P.2d 385. We hold, therefore, that under the Act, (1) delivery of the trustee's deed is necessary to convey rights in real property sold during a statutory nonjudicial foreclosure sale of property; and (2) failure to record the deed within 15 days of the sale merely precludes establishing a final sale date. Here, TD never delivered the deed to Udall, so Udall acquired no rights in the property under the Act. Whether TD recorded the deed within 15 days of the purported sale date is irrelevant to the conveyance of property rights.

3. Duty to convey
¶ 23 Udall further argues that, under the Act, TD had a duty to deliver the deed to him. Again, we disagree.
¶ 24 The Act provides: "[T]he trustee or its authorized agent shall sell the property at public auction to the highest bidder," RCW 61.24.040(4) (emphasis added); and, "The purchaser shall forthwith pay the price bid and on payment the trustee shall execute to *913 the purchaser its deed." RCW 61.24.040(7) (emphasis added). We agree with Udall that this statutory language imposes on the trustee, or its authorized agent, an obligation to sell the property to the highest bidder and to execute the deed to the highest bidder; but the inquiry does not end here. Under RCW 61.24.050, this obligation arises only if and when the trustee accepts a bid: "If the trustee accepts a bid, then the trustee's sale is final . . . ." RCW 61.24.050 (emphases added).
¶ 25 A principal, such as TD, is responsible to a third party, such as Udall, only when it gives its agent actual authority to act on its behalf or when the principal manifests to a third party, based on reasonable, objective interpretation, that the agent has apparent authority to act on its behalf. See King v. Riveland, 125 Wash.2d 500, 507, 886 P.2d 160 (1994).[4] Udall has failed to show either real or apparent authority on the part of auctioneer ABC.
¶ 26 TD hired ABC as its agent to conduct the public auction. But TD did not authorize ABC to sell the property or to accept a bid for less than $159,421.20. See RCW 61.24.040(4) and .050. Therefore, ABC did not have actual authority to sell the property to Udall for $59,422.20.
¶ 27 Nor does the record show that ABC had apparent authority to sell the property at the mistakenly low opening price that Udall bid and ABC "accepted." The only arguable communication between Udall and TD was indirect, through TD's September 19, 2003 Notice of Trustee's Sale; this Notice stated that the property owner owed the lender $148,031.24, and the property would be priced higher than $148,000 in order to satisfy the existing debt. This Notice of Trustee's Sale did not establish that auctioneer ABC had apparent authority to open bidding at $59,421.20 or any other price lower than that necessary to satisfy seller Brown's debt on the property. See King, supra.
¶ 28 The record contains no other arguable communication between TD and Udall, direct or indirect. Thus, Udall cannot satisfy the requirement that, to establish "apparent authority," the principal (TD) must have manifested to the third party (Udall) that the agent (ABC) had apparent authority to act on its behalf. Here, there was no such communication that Udall could have reasonably and objectively interpreted as creating such apparent authority in ABC.[5]See King, 125 Wash.2d at 507, 886 P.2d 160.
¶ 29 Thus, under RCW 61.24.040(4), ABC lacked actual or apparent authority to sell the property for $59,422.20. And under RCW 61.24.050, ABC lacked actual or apparent authority to accept a bid for this amount. Therefore, we hold that TD did not have a duty to deliver the deed to Udall and that the sale was void for failure to meet the Act's statutory requirements.

D. Contract Law
¶ 30 The Act provides a detailed set of procedures for nonjudicial foreclosure sales such as the one here. See generally Joseph L. Hoffmann, Court Actions Contesting The Nonjudicial Foreclosure of Deeds of Trust in Washington, 59 WASH. L.REV. 323 (1984). Applying the common law of contracts would *914 interfere with these statutory procedures and contravene the Act's purpose and policy.
¶ 31 First, contract law is not directly applicable because a deed of trust necessarily involves three parties  the debtor, the lender, and the trustee (rather than two contractual parties), Court Actions, 59 WASH. L.REV. at 323, and possibly a fourth party, the purchaser at the foreclosure sale. Second, applying contract law could contravene the Act's policies by making the process more lengthy (e.g., no finality), inefficient (e.g., more procedures), and expensive (e.g.litigation). See Cox, 103 Wash.2d at 387, 693 P.2d 683. Third, contract law is not necessarily interpreted in favor of borrowers, which is contrary to the Legislature's explicit requirement in the Act. See Koegel, 51 Wash.App. at 111, 752 P.2d 385. Lastly, if applied, contract law could provide exceptions to a narrowly prescribed statutory process that demands strict compliance. See Koegel, 51 Wash.App. at 111, 752 P.2d 385.
¶ 32 We hold, therefore, that the common law of contracts, including unilateral mistake,[6] is inapplicable to nonjudicial foreclosure sales under Washington's Deeds of Trust Act.

III. ATTORNEY FEES
¶ 33 TD argues that we should award it attorney fees under RCW 4.28.328. We disagree.
¶ 34 RCW 4.28.328(3) provides:
Unless the claimant establishes a substantial justification for filing the lis pendens, a claimant is liable to an aggrieved party who prevails in defense of the action in which the lis pendens was filed for actual damages caused by filing the lis pendens, and in the court's discretion, reasonable attorneys' fees and costs incurred in defending the action.
Courts have held that, to show a lack of substantial justification for filing a lis pendens, the aggrieved party must be able to prove that the claimant did not have a reasonable basis in fact or in law to file the lis pendens.[7] Such is not the case here.
¶ 35 TD placed the property on sale at a public auction, and Udall offered the opening bid price, which the auctioneer accepted. The receipt the auctioneer gave Udall stated that he had a vested interest in the property. Udall had a reasonable basis to believe that he had an interest in the property and, therefore, had "substantial justification" to file a lis pendens when TD refused to deliver the deed. RCW 4.28.328. We hold, therefore, that TD is not entitled to attorney fees under RCW 4.28.328, and we deny its request.
¶ 36 Accordingly, we reverse summary judgment for Udall, grant summary judgment for TD, and order the lis pendens removed from the property.
We concur: HOUGHTON, J., and VAN DEREN, A.C.J.
NOTES
[1] "Ambiguities about court involvement and other requirements are clarified, and when a trustee's sale is final is made clear." S.B. REP. on ESSB 6191.
[2] Accord 4 WASHINGTON REAL PROPERTY DESKBOOK 3D Deeds of Trust § 47.9(1) (1996) (nonjudicial procedures [are] designed ... to give notice of the proceeding to all parties with an interest in the property arising subsequent to the one being foreclosed).
[3] For example, for purposes other than statutory nonjudicial foreclosure sales under the Act, unrecorded deeds are valid conveyances. J.W. Fales Co. v. O.H. Seiple Co., 171 Wash. 630, 649-50, 19 P.2d 118 (1933).
[4] The Act explicitly permits trustees to use agents, thereby incorporating agency law principles. RCW 64.24.040. Moreover, other courts have applied agency law principles. In some jurisdictions, auctioneers serve only a ministerial function, especially if the trustee is required to be present during the auction. In others, the trustee may delegate power to an auctioneer to sell property and, if the auctioneer accepts the bid, the sale is valid. See 55 AM.JUR.2D Mortgages § 549 (1996).
[5] In our view, ABC's mere appearance at the auction and pronouncement of the mistakenly low opening bid does not meet the Act's requirement for a communication between TD and Udall establishing a reasonable belief that ABC had apparent authority to sell the property at this price.

Further detracting from Udall's claim of apparent authority was his vast experience as a sophisticated, foreclosure-sale purchaser who has purchased 100 foreclosed properties since 1995. Such an experienced foreclosure-sale purchaser should have had actual knowledge of ABC's lack of actual or apparent authority to sell the property at the auctioneer's opening bid price because this bid was $90,000 lower than the known amount the foreclosure sale had to yield to satisfy the property owner's debt.
[6] The parties cite two California Court of Appeals cases, neither of which holds that common law contract principles may supplement California's nonjudicial foreclosure laws: Residential Capital, LLC v. Cal-Western Reconveyance Corp., 108 Cal. App.4th 807, 134 Cal.Rptr.2d 162 (2003) (contract principles do not apply in nonjudicial foreclosure sales); 6 Angels, Inc. v. Stuart-Wright Mortgage, Inc., 85 Cal.App.4th 1279, 102 Cal. Rptr.2d 711 (2001) (holding that a party making a unilateral mistake in bid price was not a procedural irregularity that would justify the trustee from withholding the deed).

Moreover, we are not bound by California courts' interpretations of California law. Thus, we do not rely on these cases here.
[7] See Richau v. Rayner, 98 Wash.App. 190, 198, 988 P.2d 1052 (1999) (no substantial justification when claimants assumed that they had the rights to property without any factual basis to support such as belief); Keystone Land & Dev. Co. v. Xerox Corp., 353 F.3d 1070, 1075-76 (9th Cir. 2003) (in interpreting Washington law, the court held that substantial justification exists where a claimant relied on a valid and viable legal theory to file a lis pendens).