154 P.3d 882 (2007)
William UDALL, an individual, Clete Bremner, an individual, and Gregory D. Sargent, an individual, Petitioners,
v.
T.D. ESCROW SERVICES, INC., d/b/a T.D. Service Company, a Washington corporation, and T.D. Service Financial Corporation, a California corporation, Respondents,
U.S. Bancorp f/k/a Firstar Bank, NA, a Washington corporation, Defendant.
No. 78668-2.
Supreme Court of Washington, En Banc.
Argued January 11, 2007.
Decided March 29, 2007.
*885 Bradley Alan Maxa, Dale Louis Carlisle, Gordon Thomas Honeywell, Yvonne Marie Mattson, Tacoma, WA, for Petitioners.
David A. Leen, Leen & O'Sullivan PLLC, Seattle, WA, for Respondents.
FAIRHURST, J.
¶ 1 William Udall purchased real property in a nonjudicial foreclosure sale. The auctioneer gave Udall a receipt, but not the deed of trust for the property. When trustee T.D. Escrow Services, Inc. (hereinafter T.D.) discovered that the auctioneer had opened the bidding $100,000 lower than T.D. had authorized, T.D. refused to deliver the deed to Udall.
¶ 2 Udall challenges a Court of Appeals decision holding that the sale was not completed under the strict terms of RCW 61.24.050 of Washington's deeds of trust act, chapter 61.24 RCW (hereinafter the Act), and granting summary judgment to T.D. We hold that RCW 61.24.050 mandates that a trustee deliver the deed of trust to the purchaser following a nonjudicial foreclosure sale, absent a procedural irregularity that voids the sale. We reverse the Court of Appeals and reinstate the trial court's summary judgment ruling quieting title in Udall.

I. FACTUAL AND PROCEDURAL HISTORY
¶ 3 The material facts are undisputed. After the borrowers defaulted on their home mortgage payments, lender U.S. Bancorp directed T.D. to commence nonjudicial foreclosure proceedings on the property. T.D. properly recorded a notice of trustee's sale announcing that it would "sell [the property] at public auction to the highest and best bidder" "as provided by statute" to satisfy the "obligation secured by the Deed of Trust." Clerk's Papers (CP) at 15-16.
¶ 4 T.D. employs ABC Legal Services (hereinafter ABC) to conduct Washington-based nonjudicial foreclosure sales. On the morning of April 16, 2004, T.D. communicated to ABC by telephone the opening bids for that day's sales, identifying the opening bid for the property as $159,421.20. At the auction, ABC auctioneer Donna Hayes distributed to attendees an information sheet listing properties being sold that day and opening bids. The opening bid listed for the property was $59,421.20.
¶ 5 Udall, Clete Bremner, and Gregory D. Sargent agreed that Udall would bid for the property on behalf of the group. Hayes read the standardized nonjudicial foreclosure sale script and announced the opening bid of $59,421.20. Udall bid one dollar more. There being no other bidders, Hayes closed the sale. Udall tendered full payment and Hayes gave Udall a receipt for the property. Consistent with T.D.'s policy, the deed of *886 trust for the property was not issued to Udall at the sale.[1]
¶ 6 T.D. discovered the discrepancy in the opening bid when Udall's funds were transmitted to its main office. In a letter dated April 21, 2004, T.D. returned to Udall a check for the amount he had paid for the property and explained that ABC had not been authorized to open bidding at $59,421.20. Udall rejected the refund. T.D. refused to issue the deed of trust to Udall.[2]
¶ 7 Udall brought an action to quiet title, naming T.D. and lender U.S. Bancorp as defendants. The trial court granted summary judgment quieting title in Udall. The Court of Appeals Division Two reversed the ruling and entered summary judgment in favor of T.D. Udall v. T.D. Escrow Servs., Inc., 132 Wash.App. 290, 293-94, 130 P.3d 908 (2006). The court held that (1) the Act, not common law, governs statutory nonjudicial foreclosure sales; (2) under the strict terms of RCW 61.24.050, the sale of the property had not been completed; and (3) therefore, Udall was not entitled to the property.[3]Udall, 132 Wash.App. at 293, 130 P.3d 908. We granted Udall's petition for review. Udall v. T.D. Escrow Servs., Inc., 157 Wash.2d 1017, 2006 WL 3008155, 2006 Wash. LEXIS 630.

II. ISSUE
¶ 8 Does RCW 61.24.050 mandate that the trustee deliver the deed of trust to the purchaser following a nonjudicial foreclosure sale, absent a procedural irregularity that voids the sale?

III. ANALYSIS
A. Standard of review
¶ 9 The trial court granted summary judgment quieting title in Udall. This court is asked to interpret RCW 61.24.050. We review rulings on summary judgment and issues of statutory interpretation de novo. Berrocal v. Fernandez, 155 Wash.2d 585, 590, 121 P.3d 82 (2005).
B. RCW 61.24.050 mandates that a trustee deliver the deed of trust to the purchaser following a nonjudicial foreclosure sale, absent a procedural irregularity that voids the sale
¶ 10 The parties dispute what timing RCW 61.24.050 establishes for conveying property rights to the purchaser via delivery of the deed of trust. The core of their dispute is whether RCW 61.24.050 mandates that a trustee deliver the deed of trust to the purchaser following a nonjudicial foreclosure sale, absent a procedural irregularity that voids the sale. To determine the answer we examine (1) the plain meaning of RCW 61.24.050, (2) whether auctioneer ABC had authority to accept Udall's bid on T.D.'s behalf, (3) whether deficiency in price provides a ground to set aside a nonjudicial foreclosure sale, and (4) whether a trustee's fiduciary duty provides a ground to repudiate a nonjudicial foreclosure sale.
1. Plain meaning of RCW 61.24.050
¶ 11 "A court's objective in construing a statute is to determine the legislature's intent." Tingey v. Haisch, No. 77689-0, ___ Wash. ___, ___, 152 P.3d 1020, 1023 (2007). "`[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.'" Id. (alteration in original) (internal quotation marks omitted) (quoting State v. Jacobs, 154 Wash.2d 596, 600, 115 P.3d 281 (2005)). Plain meaning is "discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." Id. at 1023. If *887 the statutory language remains susceptible to more than one reasonable interpretation, the statute is considered ambiguous, and the court may then employ statutory construction tools, including legislative history, for assistance in discerning legislative intent. Id.
¶ 12 RCW 61.24.050 provides, in relevant part:
When delivered to the purchaser, the trustee's deed shall convey all of the right, title, and interest in the real and personal property sold at the trustee's sale which the grantor had or had the power to convey at the time of the execution of the deed of trust, and such as the grantor may have thereafter acquired. If the trustee accepts a bid, then the trustee's sale is final as of the date and time of such acceptance if the trustee's deed is recorded within fifteen days thereafter.
The first sentence of RCW 61.24.050 identifies that a sale through nonjudicial foreclosure conveys to the purchaser the rights, title, and interests possessed by the grantor (hereinafter borrower) when the borrower originally executed the deed of trust to the grantee (hereinafter lender), as well as all rights, title, and interests acquired by the borrower subsequently (e.g., accrued rents). See 27 Marjorie Dick Rombauer, Washington Practice: Creditors' RemediesDebtors' Relief § 3.68 (1998 & Supp.2007). The second sentence establishes that the effective date for recording a deed of trust relates back to the date and time of the nonjudicial foreclosure sale if the deed is recorded within 15 days. Id.
(a) Delivery of the deed of trust
¶ 13 The Court of Appeals found that the introductory clause to the first sentence of RCW 61.24.050, "[w]hen delivered to the purchaser," conditioned the purchaser's acquisition of title and the sale's finality on delivery of the deed of trust. The court explained:
According to the plain meaning of this sentence, a person acquires no rights to the property sold by nonjudicial foreclosure until the deed is delivered. Thus, a foreclosure sale itself, including the acceptance of an auction bid, without delivery of the trustee's deed, conveys no property rights under the Act.
Udall, 132 Wash.App. at 298, 130 P.3d 908. However, this interpretation is not plausible when RCW 61.24.050 is read in conjunction with the rest of the Act.
¶ 14 RCW 61.24.040 sets out the nonjudicial foreclosure procedure. RCW 61.24.040(4) and (7) detail a sequence of events in that procedure. First "the trustee or its authorized agent shall sell the property at public auction to the highest bidder." RCW 61.24.040(4) (emphasis added). Then the purchaser. "shall forthwith pay the price bid and on payment the trustee shall execute" the deed of trust to the purchaser. RCW 61.24.040(7) (emphasis added). As the Court of Appeals itself stated, "this statutory language imposes on the trustee, or its authorized agent, an obligation to sell the property to the highest bidder and to execute the deed to the highest bidder." Udall, 132 Wash.App. at 300, 130 P.3d 908.
¶ 15 Considered in conjunction with the directives of RCW 61.24.040(4) and (7), RCW 61.24.050 does not permit the trustee to withhold the deed at its discretion. In RCW 61.24.050, "when" in "[w]hen delivered to the purchaser," means "at which time: and then: whereupon." Webster's Third New International Dictionary 2602 (2002). Thus, the trustee sells the property at auction, the purchaser pays the price bid, and the trustee executes the deed to the purchaser at which time "all of the right, title, and interest" in the property is conveyed. RCW 61.24.050.
¶ 16 The trustee's delivery of the deed to the purchaser is a ministerial act, symbolizing conveyance of property rights to the purchaser. The trustee cannot withhold delivery unless the sale itself was void due to a procedural irregularity that defeated the trustee's authority to sell the property. Examples of procedural irregularities that void a nonjudicial foreclosure sale include the borrower's presale bankruptcy filing, see 11 U.S.C. § 362(a) and In re Schwartz, 954 F.2d 569, 570-71 (9th Cir.1992) ("creditor violations of the Bankruptcy Code's automatic stay provision are void"), and a pending action on the obligation secured by the deed of *888 trust. See RCW 61.24.030(4); Cox v. Helenius, 103 Wash.2d 383, 388, 693 P.2d 683 (1985) (suit brought by borrower prevented the trustee's initiation of foreclosure). Insufficiency of price, as in this sale, is not a procedural irregularity that voids the sale, it is merely a mistake.
(b) Acceptance of a bid
¶ 17 The second sentence of RCW 61.24.050, "[i]f the trustee accepts a bid, then the trustee's sale is final," establishes that a bid at a nonjudicial foreclosure sale is not automatically accepted. Rather, the bid operates as an offer that creates the power of acceptance in the trustee. This is consistent with settled auction law, wherein asking for bids is asking for offers, which the seller (or the seller's agent) remains free to reject prior to acceptance. 1 Joseph M. Perillo, Corbin on Contracts § 4.14 (rev. ed.1993).
¶ 18 Acceptance at auction is "commonly signified by the fall of the hammer or by the auctioneer's announcement `Sold,'" after which the "sale is consummated [and n]either party can withdraw." Id. at 643. Only by express reservation announced prior to the sale can the seller reserve the right to review and reject bids after the auctioneer closes the sale. Cont'l Can Co. v. Commercial Waterway Dist. No. 1, 56 Wash.2d 456, 458-60, 347 P.2d 887 (1959). T.D. made no such reservation.[4] When auctioneer Hayes announced "sold," Hayes accepted Udall's bid on T.D.'s behalf and a contract was formed. T.D. could not re-exercise its power of acceptance to reject Udall's bid when it later discovered the erroneous opening bid amount.
¶ 19 The first clause of RCW 61.24.050, "[w]hen delivered to the purchaser, the trustee's deed shall convey," read in conjunction with RCW 61.24.040(4) and (7), describes the ministerial act of delivering the deed of trust to the purchaser. The second sentence of RCW 61.24.050 acknowledges that the trustee retains the right to refuse bids until the close of the sale, but the trustee's power of acceptance is exercised by the auctioneer when the auctioneer announces "sold," unless the trustee has expressly reserved otherwise. The plain meaning of RCW 61.24.050 thus mandates that a trustee deliver the deed of trust to the purchaser following a nonjudicial foreclosure sale, absent procedural irregularity that voids the sale. In this case, no such irregularity occurred, so T.D. must deliver the deed to Udall.
2. Auctioneer had apparent authority to sell the property
¶ 20 The Court of Appeals held that T.D. did not have a duty to deliver the deed to Udall because "ABC lacked actual or apparent authority to sell the property for $59,422.20 [and] to accept a bid for this amount." Udall, 132 Wash.App. at 301, 130 P.3d 908. We disagree with the conclusion that ABC did not have apparent authority to sell the property to Udall.
¶ 21 An agent has apparent authority when a third party reasonably believes the agent has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations. Restatement (Third) of Agency § 2.03, at 113 (2006). Apparent authority may exist in agents who act beyond the scope of their actual authority.[5]Id. cmt. a at 113. Apparent authority is present where the principal's objective manifestations (1) "cause the one claiming apparent authority to actually, or subjectively, believe that the agent has authority to act for the principal," and (2) "the claimant's actual, subjective belief is objectively reasonable." King v. Riveland, 125 Wash.2d 500, 507, 886 P.2d 160 (1994).
*889 ¶ 22 The court's focus on ABC's needing apparent authority "to sell the property at the mistakenly low opening price," or any particular price, is misplaced. Udall, 132 Wash.App. at 301, 130 P.3d 908 (emphasis added). The appropriate analysis focuses on whether Udall believed, based on T.D.'s manifestations, that ABC had "authority to act for" T.D. to sell the property on T.D.'s behalf, and whether that belief was "objectively reasonable." King, 125 Wash.2d at 507, 886 P.2d 160. A principal may "make a manifestation by. . . . placing an agent in charge of a transaction or situation." Restatement, supra, § 3.03 cmt. b at 174. T.D., by issuing the notice of trustee's sale, made just such a manifestation.[6] Based on T.D.'s representation, Udall could reasonably believe that T.D. or its authorized agent would conduct the sale. When ABC auctioneer Hayes in fact conducted the sale, Udall was reasonable in believing that she did so as T.D.'s authorized agent.
¶ 23 Moreover, when a principal has vested an agent with "general authority to engage in a class of transactions, subject to limits known only to the agent and the principal, third parties may reasonably believe the agent to be authorized to conduct such transactions and need not inquire into the existence of undisclosed limits on the agent's authority." Restatement, supra, § 3.03 cmt. b at 175. T.D. employed ABC to conduct its nonjudicial foreclosure sales in Washington. At this sale, Hayes read the standard script and announced the opening bid as $59,421.20. It is undisputed that the opening bid was erroneous, but the error did not create a duty in Udall, an arm's length third party, to question whether the announced bid was the amount authorized by T.D.
¶ 24 T.D.'s manifestations provided Udall with an objectively reasonable basis to conclude that ABC, through Hayes, had authority to act for T.D. in conducting the property sale. Hayes thus acted with apparent authority when she accepted Udall's high bid and closed the sale. Principal T.D. was bound by that acceptance. RCW 61.24.050 mandates that T.D. must deliver the deed of trust to Udall.
3. Deficiency in price alone provides insufficient ground on which to set aside this nonjudicial foreclosure sale
¶ 25 Grossly inadequate purchase price together with circumstances indicating some additional unfairness may provide sufficient equitable grounds to set aside a nonjudicial foreclosure sale. For example, in Cox, the trustee, who was also the lender's attorney, knew that the borrowers believed that their pending action against the lender had halted foreclosure proceedings. Cox, 103 Wash.2d at 386, 693 P.2d 683. The trustee nonetheless sold the property at foreclosure for four to six percent of its worth. Id. at 387, 693 P.2d 683. After voiding the sale on other grounds, the Cox court stated, "[e]ven if the statutory requisites to foreclosure had been satisfied . . . this trustee's actions, along with the grossly inadequate purchase price" would justify voiding the sale. Id. at 388, 693 P.2d 683.[7]
¶ 26 By contrast, the Court of Appeals upheld a nonjudicial foreclosure sale for eight percent of the property's value, noting that although the sale exhibited technical, formal error, there was no showing that the borrower had been harmed or prejudiced. Steward v. Good, 51 Wash.App. 509, 514-15, 754 P.2d 150, review denied, 111 Wash.2d 1004 (1988). The Steward court stated that "[c]ourts have universally recognized . . . mere inadequacy of price alone . . . [to be] insufficient reason *890 for setting aside a [foreclosure] sale." Id. at 514, 754 P.2d 150.
¶ 27 In this case, T.D. made no showing that unfairness prejudiced the borrower, and the price, more than 35 percent of the intended opening bid, cannot be deemed grossly inadequate. We decline to invalidate this nonjudicial foreclosure sale where no grounds for equitable intervention are present.
4. T.D.'s fiduciary duty does not justify it repudiating the sale
¶ 28 Finally, we reject T.D.'s assertion that its fiduciary duty to the borrower and lender required it to reject Udall's bid. The fiduciary duties imposed on a trustee by the Act do not support a trustee repudiating a nonjudicial foreclosure sale because of a deficiency in sale price. The Act must be construed in favor of borrowers because of the relative ease with which lenders can forfeit borrowers' interests and the lack of judicial oversight in conducting nonjudicial foreclosure sales. Queen City Sav. & Loan Ass'n v. Mannhalt, 111 Wash.2d 503, 514, 760 P.2d 350 (1988) (Dore, J., dissenting); Koegel v. Prudential Mut. Sav. Bank, 51 Wash.App. 108, 111, 752 P.2d 385, review denied, 111 Wash.2d 1004 (1988). However, T.D.'s delivering the deed of trust to Udall does not injure the borrower's interests, because the debt secured by the deed of trust is per se satisfied by the foreclosure sale due to the Act's antideficiency provision.[8] The lender's interests are likewise protected; it has recourse to a negligence claim against T.D., as T.D. acknowledged in its briefing.
¶ 29 It is the interests of trustee T.D., which can avoid potential liability by repudiating the sale, and third party purchaser Udall, that are truly at stake in this case. The Act was not promulgated to protect and benefit trustees to the detriment of purchasers. Allowing repudiation of a nonjudicial foreclosure sale based solely on a deficiency in price would result in a low opening bid triggering doubt about the sale's finality. This, in turn, would deter buyers and impair the efficacy of the nonjudicial foreclosure process. Undermining public confidence in the finality of foreclosure sales is contrary to the Act's goals of promoting efficient, inexpensive, and procedurally sound foreclosures and the stability of land titles.[9]

IV. CONCLUSION
¶ 30 We hold that RCW 61.24.050 mandates that a trustee deliver the deed of trust to the purchaser following a nonjudicial foreclosure sale, absent procedural irregularity that voids the sale. We reverse the Court of Appeals and reinstate the trial court's award of summary judgment quieting title in Udall.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, TOM CHAMBERS, CHARLES W. JOHNSON, SUSAN OWENS, BARBARA A. MADSEN, JAMES M. JOHNSON, BOBBE J. BRIDGE, JJ.
SANDERS, J. (concurring).
¶ 31 I concur with the majority that the plain meaning of RCW 61.24.050 favors William Udall. However, I take issue with the majority's quoted language from State v. Jacobs, 154 Wash.2d 596, 115 P.3d 281 (2005), which declares plain meaning is to be "`discerned from the ordinary meaning of the language at issue, as well as from the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" Majority at 886 (quoting Jacobs, 154 Wash.2d at 600, 115 P.3d 281 (emphasis added)).
¶ 32 The term "plain meaning" necessarily means we do not look beyond the statutory language itself. "Where statutory language is plain and unambiguous, a court will not *891 construe the statute but will glean the legislative intent from the words of the statute itself." Burton v. Lehman, 153 Wash.2d 416, 422, 103 P.3d 1230 (2005). See also Sleasman v. City of Lacey, ___ Wash.2d ___, 151 P.3d 990 (2007) (Statutes with plain meanings are not subject to construction.). Where a statutory term is not defined, it is "given its `usual and ordinary meaning." Burton, 153 Wash.2d at 422-23, 103 P.3d 1230 (quoting State v. Hahn, 83 Wash.App. 825, 832, 924 P.2d 392 (1996)). Courts may not read into a statute a meaning that is not there. Id.
¶ 33 In short, I see no reason to look beyond the unambiguous language of RCW 61.24.050. Having reviewed the plain meaning of the statute in the present case (under the proper assumption that the legislature "meant what it said," Department of Ecology v. Campbell & Gwinn, 146 Wash.2d 1, 24, 43 P.3d 4 (2002) (Owens, J., dissenting)), I reach the same conclusion as the majority.
NOTES
[1] It is T.D.'s policy before issuing a deed of trust to verify the validity of a bid and receipt of funds, as well as to check for intervening bankruptcies and other potential problems that might affect the sale.
[2] T.D. subsequently recommenced the nonjudicial foreclosure process by recording a new notice of foreclosure and rescheduling the sale.
[3] The Court of Appeals also denied T.D.'s request for attorney fees. Udall, 132 Wash.App. at 303, 130 P.3d 908. T.D. did not request review of that decision.
[4] T.D.'s claim that it reserved the right to review the sale after the auctioneer had accepted the high bid is without merit. The announcement prior to the sale that it was made "without warranty" as to title or other liens, and "contingent on the grantor's not having filed bankruptcy," CP at 33, does not create an express reservation by T.D. of the right to reject Udall's bid after the close of the sale.
[5] It is undisputed that T.D. directed ABC to open bidding on the property at $159,421.20. As a result, ABC lacked actual authority to open bidding on the property at $59,421.20.
[6] The notice announced "NOTICE IS HEREBY GIVEN THAT the undersigned Trustee, [T.D.], will . . . sell at public auction to the highest and best bidder, payable at the time of the sale, the [property]." CP at 15.
[7] We have announced a similar principle with respect to equitable intervention in judicial foreclosure sales. See Miebach v. Colasurdo, 102 Wash.2d 170, 177, 685 P.2d 1074 (1984) (buyer's "constructive if not actual notice of the [borrowers'] claim of right to . . . their residence before he acquired title," together with the grossly inadequate sale price of less than two percent of the property's value, were sufficient to justify setting aside a judicial foreclosure sale on equitable grounds). See also Lovejoy v. Americus, 111 Wash. 571, 572-73, 575, 191 P. 790 (1920); Roger v. Whitham, 56 Wash. 190, 191, 195, 105 P. 628 (1909).
[8] "Washington law provides that no deficiency judgment may be obtained when a deed of trust is foreclosed." Wash. Mut. Sav. Bank v. United States, 115 Wash.2d 52, 58, 793 P.2d 969, 800 P.2d 1124 (1990).
[9] The three goals of the Act are: "(1) that the nonjudicial foreclosure process should be efficient and inexpensive, (2) that the process should result in interested parties having an adequate opportunity to prevent wrongful foreclosure, and (3) that the process should promote stability of land titles." Plein v. Lackey, 149 Wash.2d 214, 225, 67 P.3d 1061 (2003) (citing Cox, 103 Wash.2d at 387, 693 P.2d 683).