[Nos. 19830-4-II; 21020-7-II.    Division Two.    September 5, 1997.]

COUNTRY EXPRESS STORES, INC., ET AL., *Appellants,* v.
ADAM M. SIMS, ET AL., *Respondents.*

*Walter S. Tabler* and *Smith, Smart, Hancock, Tabler & Schwensen,* for appellants.

*Margaret M. Skladany,* pro se.

*Stephania C. Denton, Bruce Winchell* and *Mills Meyers Swartling* for respondent Hanson, Baker, Ludlow & Drumheller, P.S.

*John R. Zeldenrust, Sam B. Franklin,* and *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* for respondent Thomas R. Goode, Inc., P.S.

*Sheena R. Aebig, Margaret A. Sundberg,* and *Williams Kastner & Gibbs, L.L.P.,* for respondents Sims and Adam M. Sims, Ltd.

*Brian L. Budsberg* and *Owens Davies Mackie,* for the trustee.

JOHNSON, J.* — Property was sold at a trustee's sale, and the senior lienholder purchased the property. A junior lienholder and the debtors asked the trial court to invalidate the sale on the grounds the trustee chilled the bidding and failed to marshall the assets. The trial court held the trustee did not chill the bidding and appellants had waived their right to contest the sale on the basis of a failure to marshall. The trial court also quashed the lis pendens on the property after this appeal was filed. We affirm the trial court.

## FACTS

Appellants, Country Express Stores, Inc. and Margaret M. Skladany (Debtors), borrowed money from Olympic Coast Mortgage, Inc. (Olympic) in January 1992, securing the debt with two deeds of trust. One deed covered four parcels of land located in Pierce County, including the Skladany residence and a convenience store with gas station. The note matured, Debtors failed to make payment, and Olympic commenced foreclosure proceedings. The original trustee's sale was set for October 15, 1993. This first sale was continued to December 17, 1993, and on December 16, 1993, Debtors filed Chapter 11 bankruptcy proceedings, which automatically stayed the trustee sale. 11 U.S.C. § 362; *see* RCW 61.24.130(4).

During pendency of the bankruptcy proceedings, Olympic assigned its interest in the deeds of trust to Adam M. Sims, Ltd. (Sims). The law firm of Hanson, Baker, Ludlow & Drumheller (Hanson Baker) was appointed as successor

---

*Justice Charles W. Johnson is serving as a judge pro tempore of the Court of Appeals, Division II, pursuant to CAR 21(c).

trustee, and represented Sims during the bankruptcy proceedings. In bankruptcy court, Sims and other creditors, including the Stoulils (junior lienholders), moved for relief from the stay on the trustee sale on grounds the value of the property was insufficient to secure the note. The court continued the motion, ordering Debtors to file appraisals and other evidence of value within two months' time.

The value of the property in question was contested at the bankruptcy court. Sims submitted a 1994 appraisal valuing the business property at $840,000 and the residence at $420,000. Debtors submitted a 1991 appraisal, which was completed before construction of the gas station and convenience store, valuing the business at $1,221,489. Debtors also submitted a 1994 appraisal, valuing the business at $1,690,000 plus the value of inventory. On the basis of this appraisal, Debtors claimed the total value of the business and residence was approximately $1,800,000 to $2,200,000.

The bankruptcy court then ordered Debtors to file a plan and disclosure statement with the court within two months, set a payment schedule to be followed by Debtors, and purchase insurance for the property. The court ruled that if Debtors failed to follow the order, the creditors could obtain, on five days' notice, relief from the stay. Debtors failed to file a plan and disclosure statement, moving for an extension of time in which to do so. The bankruptcy court lifted the stay on November 10, 1994, and the trustee reset the foreclosure sale for January 13, 1995. Debtors, in late December, moved the bankruptcy court to reimpose the stay, which the court refused to do. Again, on January 11, two days before the sale, Debtors argued a motion to reimpose the stay. At this hearing, Debtors represented they would request the trustee marshall the assets and Hanson Baker resign as trustee. The Stoulils suggested the court reimpose the stay in order to allow time to marshall the assets. The court denied the motion to reimpose the stay.

On January 11, the Stoulils sent a request to John Ludlow of Hanson Baker to marshall the assets or, in the alternative, to resign as trustee in favor of someone who had not acted as attorney for beneficiary Sims. Debtors made a similar request. Ludlow replied, stating the request for marshaling was untimely and meritless and the bankruptcy court had previously denied requests for marshaling. He resigned as trustee, and Thomas R. Goode, Inc., P.S. (Goode) was appointed successor trustee.

Goode reviewed the file concerning the trustee sale on the morning of January 13 and consulted with Ludlow. He decided not to marshall the assets. At the sale, the Stoulils asked Goode to continue the sale so the assets could be marshaled. The Stoulils did not express an interest in bidding on the property, did not identify any third party bidders, and did not provide Goode with an appraisal.

Present at the sale were Goode, Ludlow, the Stoulils and counsel, Mr. Skladany and counsel and, according to the Stoulils, various third parties. Before the actual sale, Goode read a memorandum of trustee's sale proceeding that had been prepared by Ludlow. The memorandum set forth reasons for Goode's refusal to either continue the sale or marshall the assets. According to the Stoulils, Goode read the memorandum before asking for bidders to identify themselves. The memorandum included the following statements:

5. The beneficiary of the Deed of Trust has an appraisal for the 164th Avenue property reporting a value of $420,000.00 and an appraisal for the convenience store property reporting a value of $840,000.00. The total value of these two properties is $1,260,000.00.

6. Pacific Coast Investments has a first Deed of Trust on the convenience store. The unpaid principal balance on said first Deed of Trust is approximately $820,000.00.

7. The amounts owed on the first and second Deeds of Trust on the convenience store exceed the value of the two properties by approximately $240,000.00.

8. I am mindful of the borrowers' and Stoulils' rights to sue to enjoin this Trustee's Sale under RCW 64.24.130 [sic]. I also understand that neither party as [sic] resorted to these rights.

Clerk's Papers at 397 (Mem. of Trustee's Sale Proceedings). The property was sold to Sims for the amount of his debt, totaling $683,588.19. No one else entered a bid.

On January 18, Debtors filed a complaint to set aside the foreclosure sale, along with a lis pendens against the property. The Stoulils filed a complaint in intervention. The Stoulils moved for summary judgment and Debtors, unrepresented by counsel, joined in the motion. Sims filed a cross motion for summary judgment, as did Hanson Baker and Goode.

The trial court considered two issues: whether the assets should have been marshaled and whether the bidding had been chilled. The court found the marshaling issue had been raised in bankruptcy proceedings, and, because the Stoulils had the opportunity to seek to enjoin the sale in state court proceedings and did not seek an enjoinment, they waived any right to contest the sale after the fact. Regarding a chilling of the bidding, the court found there was no evidence to suggest any bidding was suppressed and no evidence there was any collusion or intent to chill bids. The court, therefore, refused to set aside the sale. The Stoulils moved for reconsideration and the court denied the motion. The trial court dismissed the claims and granted defendants' motions for summary judgment. The Stoulils claim their interests have been negated if the sale was valid.

Skladany filed a lis pendens prior to the Stoulilses' intervening in this case. The trial court's order granting judgment in favor of defendants and dismissing plaintiffs' and intervenors' claims did not include a provision removing the lis pendens on the property. Sims moved to quash the lis pendens or, in the alternative, to require plaintiffs and intervenors to post a supersedeas bond. Plaintiffs and intervenors opposed the motion. The trial court stated

that had a motion to quash the lis pendens been placed before it at the time the order of dismissal was presented, the court would have quashed it because no litigation was in place at that time. The trial court quashed the lis pendens.

This appeal followed. Appellants are Country Express Stores and Skladany (Debtors) and the Stoulils. Appellants assign error to the trial court's orders denying their motions for summary judgment, dismissing their claims, and granting Sims's, Goode's, and Hanson Baker's cross-motions for summary judgment. Error is also assigned to the order denying reconsideration. The order quashing the lis pendens was appealed separately and the cases are consolidated.

The issues presented are: (1) whether the trustee's and beneficiary's actions at the foreclosure sale were egregious enough to invalidate the sale where there is no proof that the statements actually chilled the bidding; (2) whether the foreclosure sale should be invalidated because the trustee did not marshall the assets; and (3) whether, after appeal, the trial court has jurisdiction under the Rules of Appellate Procedure to quash a lis pendens.

## ANALYSIS

■ On review of summary judgment, an appellate court engages in the same inquiry as the trial court. If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment will be affirmed. The court may sustain the trial court's judgment on any theory established in the pleadings and supported by the proof. *Failor's Pharmacy v. Department of Soc. & Health Servs.,* 125 Wn.2d 488, 493, 886 P.2d 147 (1994).

■ We note that Washington's deeds of trust act, RCW 61.24, should be construed to further three basic objectives. First, the nonjudicial foreclosure process should remain efficient and inexpensive. Second, the process should provide an adequate opportunity for interested

parties to prevent wrongful foreclosure. Third, the process should promote the stability of land titles. *Cox v. Helenius,* 103 Wn.2d 383, 387, 693 P.2d 683 (1985). We keep these objectives in mind when analyzing appellants' claims.

I

The first issue is whether the actions of the trustee and the beneficiary at the foreclosure sale were egregious enough to invalidate the sale where there was no proof the statements actually chilled the bidding. Appellants argue the trustee has a fiduciary duty to the parties when selling property at a foreclosure sale. Appellants assert this duty was breached because the trustee was appointed less than 24 hours before the sale, he was under the complete control and dominion of the beneficiary's attorney, and he failed to conduct himself in a fair and impartial manner. Appellants allege the behavior of the trustee was both collusive and inappropriate, and was designed to chill the bidding. Further, appellants assert the trial court erred in placing the burden of proof on appellants to prove that third party bidders were present at the sale and that these parties were discouraged from bidding.

In order to establish any merit to their complaints regarding a chilling of the bidding, the Stoulils/Debtors would first have to establish the trustee owed them a fiduciary duty to refrain from the acts of which they complain. Even assuming the trustee owed a duty to the junior lienholder, which we do not decide, we agree with the trial court that the burden of proof is on the party challenging the trustee's sale to establish there were potential bidders present at the sale and the trustee's actions affected the bidding. We also agree with the trial court that the Stoulils/Debtors did not meet this burden.

Chilled bidding is a ground for setting aside a nonjudicial foreclosure sale. There are two types of chilled bidding.

The first is intentional, occurring where there is collusion for the purpose of holding down the bids. The second consists of inadvertent and unintentional acts by the trustee that have the effect of suppressing the bidding. To establish chilled bidding, the challenger must establish the bidding was actually suppressed, which can sometimes be shown by an inadequate sales price. G. NELSON & D. WHITMAN, REAL ESTATE FINANCE LAW § 7.21 (3d ed. 1994). Appellants assert the trustee chilled the bidding, which resulted in a lower price for the property, and extinguished their interests. However, as the trial court found below, Appellants offer no evidence the bidding was actually suppressed and there is ample evidence the property brought a fair price.

Appellants themselves admit, "the fact is that it will never be known, with any degree of certainty, whether the third parties in attendance at the sale intended to bid and were discouraged . . . ." Appellants' Reply Br. at 7 n.2. Appellants also state, "the trial judge demanded that the Plaintiffs and the Stoulils prove that there was actually a third party bidder present at the sale who would have bid but for the outrageous statements of the trustee. This is a burden that the Plaintiffs and Stoulils cannot meet." Br. of Appellants at 24.

█ If Appellants cannot put forth evidence there were bidders present at the sale and that the bids were chilled, Appellants cannot prevail on their claims. Appellants, in order to meet their burden to oppose summary judgment in respondents' favor, must make a showing sufficient to establish the existence of the elements essential to that party's case. *Young v. Key Pharm., Inc.,* 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The nonmoving party cannot rely on allegations made in its pleadings, but, rather, the response "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." CR 56(e); *see Young,* 112 Wn.2d at 225-26. The nonmoving party must provide affirmative factual evidence to oppose a motion for summary

judgment. *Dunlap v. Wayne,* 105 Wn.2d 529, 536, 716 P.2d 842 (1986).

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is. competent to testify to the matters stated therein.

CR 56(e). Statements consisting of inadmissible evidence must be disregarded. *Washington Pub. Util. Dists.' Utils. Sys. v. PUD No. 1 of Clallam County,* 112 Wn.2d 1, 17, 771 P.2d 701 (1989).

Here, Appellants' allegations of chilled bidding are not supported by affidavits setting forth affirmative, factual evidence. Appellants assert there were third parties present at the sale, but present no evidence that these parties were bidders. Without evidence that bidders were present and that the Trustee's actions resulted in the property's being sold for a lesser price, Appellants do not meet their burden.

## II

The second issue is whether the foreclosure sale should be invalidated because the trustee did not marshall assets. Appellants argue the trustee must exercise independent judgment when considering a marshaling request, and, because the trustee did not do so, the sale should be invalidated. Appellants also contend Hanson Baker should have resigned earlier than it did and appointed a competent and independent successor trustee. The trial court held because appellants did not seek enjoinment of the sale, they waived their right to contest the sale after the fact.

RCW 61.24.130 grants to junior lienholders the right to move to restrain the sale "on any proper ground" upon five days notice and payment of the sums due on the obligation. Failure to pursue presale remedies when a party has knowledge of a basis for setting aside the sale before the sale constitutes a waiver. *In Koegel v. Pruden-*

*tial Mut. Sav. Bank,* 51 Wn. App. 108, 752 P.2d 385 (1988), the court upheld a nonjudicial foreclosure sale against a challenge that proper notice was not given. The court applied the doctrine of waiver to the mortgagor, stating:

> The doctrine of waiver should preclude
>
> an action by a party to set aside a completed trustee's sale whenever the party (1) received notice of the right to enjoin the trustee's sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to enjoin the sale.

*Koegel,* 51 Wn. App. at 114 (quoting Joseph L. Hoffman, Comment, *Court Actions Contesting the Nonjudicial Foreclosure of Deeds of Trust in Washington,* 59 WASH. L. REV. 323, 335 (1984)). The court further noted the statutory notices of foreclosure and trustee's sale will usually be sufficient. *Koegel,* 51 Wn. App. at 114.

Other cases also support this principle. In *Peoples Nat'l Bank v. Ostrander,* 6 Wn. App. 28, 491 P.2d 1058 (1971), the court affirmed summary judgment for the deed of trust beneficiary against a counterclaim in an unlawful detainer action brought after the sale. The counterclaim alleged the deed of trust had been obtained by fraud. The debtor/grantor knew of the alleged fraud, had notice of the sale, and failed to restrain the sale in order to litigate the fraud issue, waiting until after the sale to assert its defense. The court noted: "To allow one to delay asserting a defense until this late stage of the proceedings would be to defeat the spirit and intent of the trust deed act." *Ostrander,* 6 Wn. App. at 32.

*In Woolworth v. Micol Land Co.,* 55 Wn. App. 671, 677, 780 P.2d 264 (1989), the court held the junior lienholder in a bankruptcy proceeding, under state law, is precluded from seeking to set aside the trustee's sale after the sale takes place when the party received notice of the sale and did not seek to restrain the sale. And, in *Steward v. Good,* 51 Wn. App. 509, 515, 754 P.2d 150 (1988), the court held the owners of the property waived their right to challenge

the trustee's sale because they failed to pursue presale remedies, had notice of the sale, and their objections to the sale were known or should have been known to them prior to the sale.

We find the trial court correctly concluded that Appellants waived their right to raise the marshaling issue as a basis for invalidation of the foreclosure sale because they (1) received notice of their right to enjoin the sale; (2) had knowledge of this defense prior to the sale; and (3) failed to bring an action to enjoin the sale. Statutory notice of the right to enjoin is sufficient under *Koegel,* 51 Wn. App. 108. Here, Appellants had notice of the sale. Appellants also had knowledge of the defense prior to the sale. During bankruptcy proceedings, the Stoulils raised the issue of marshaling several times.

The Stoulils assert an adversary action would have been necessary for the marshaling issue to have been properly before the bankruptcy court. Whether the issue was settled by the bankruptcy court, however, is not the point. Appellants were aware of a controversy surrounding the marshaling issue and never filed any complaint seeking marshaling after the relief from stay was granted by the bankruptcy court. Appellants also never filed an action to restrain the sale under RCW 61.24.130.

Therefore, under these facts, we hold the doctrine of waiver precludes Appellants from asserting a claim for invalidation of the sale based on the Trustee's decision not to marshall the assets. Adequate opportunities to prevent wrongful foreclosure exist in the presale remedies. To rule otherwise would frustrate the policies of the deeds of trust act to provide an efficient and inexpensive foreclosure process and to promote the stability of land titles.

## III

The third issue is whether, once an appellate court has accepted review of a case, the trial court has jurisdiction under the Rules of Appellate Procedure to quash a lis

pendens. Because we affirm the trial court's ruling on summary judgment, this issue is moot.

Affirmed.

BRIDGEWATER, A.C.J., and SEINFELD, J., concur.