[No. 30593-3-II.   Division Two.   May 18, 2004.]

WELLS FARGO BANK MINNESOTA, *Respondent*, v. JAMES G.
VINCENT, ET AL., *Appellants*.

*Timothy J. Dack*, for appellants.

*Jennifer L. Aspaas* (of *Bishop White Miersma & Marshall, P.S.*), for respondent.

¶1 MORGAN, J. — James G. and Ginger L. Vincent appeal an adverse summary judgment entered in Wells Fargo Bank Minnesota's unlawful detainer action. Even though we take the facts and inferences in the light most favorable to the Vincents,[1] we affirm.

¶2 The Vincents owned property at 9902 NE 349th Street, La Center, Washington. In 1998, they granted a deed of trust that at the times material here has been held by Wells Fargo.

¶3 In the summer of 2001, the Vincents failed to make payments secured by the deed of trust. In September of that year, Wells Fargo and its servicing agent, Option One, set a nonjudicial foreclosure sale for December 21, 2001.

¶4 In October 2001, the Vincents and Wells Fargo signed a letter agreement in which the Vincents agreed to make up the missed payments according to certain conditions. The agreement noted that "foreclosure proceedings have been initiated[;]" that "Option One reserves the right to continue foreclosure proceedings upon your failure to remit any additional funds owing[;]" and that if the Vincents failed to comply with the stated conditions, "Option One will proceed with foreclosure proceedings without further notice or de-

---

[1] *Graff v. Allstate Ins. Co.*, 113 Wn. App. 799, 802, 54 P.3d 1266 (2002), *review denied*, 149 Wn.2d 1013 (2003).

mand."[2] According to James Vincent's affidavit, which we assume to be true for purposes of this appeal, the parties did not discuss "continuing the pending sale to any future date," nor did he "ever agree . . . to have [it] . . . continued to any future date."[3] The Vincents paid as agreed until about February 2002, when they again defaulted.

¶5 Meanwhile, on December 21, 2001, at the time and place scheduled for the sale, the trustee publicly announced that the foreclosure sale was postponed to January 18, 2002. On January 18, 2002, he publicly announced that the sale was postponed to February 22, 2002, and on February 22, 2002, he publicly announced that the sale was postponed to March 22, 2002. On each occasion, he attributed the postponement to "mutual agreement."[4]

¶6 On March 22, 2002, the sale took place. Wells Fargo was the high bidder and received title to the property. It notified the Vincents, who refused to leave, then brought this action for unlawful detainer. The Vincents contested the validity of the foreclosure sale, so on May 12, 2003, Wells Fargo moved for summary judgment. The trial court granted the motion, and the Vincents filed this appeal.

¶7 Although the Vincents do not dispute that they received proper notice of the December 21 sale, they seem to claim that Wells Fargo could not, at least without additional notice to them, postpone the sale three times by public proclamation. RCW 61.24.040(6), however, provides to the contrary. It states:

The trustee may for any cause the trustee deems advantageous, continue the sale for a period or periods not exceeding a total of one hundred twenty days by a public proclamation at the time and place fixed for sale in the notice of sale or, alternatively, by giving notice of the time and place of the postponed sale in the manner and to the person specified in RCW 61.24.040(1)(b), (c), (d), and (e) and publishing a copy of

---

[2] Clerk's Papers (CP) at 10-11.

[3] CP at 97.

[4] CP at 32.

such notice once in the newspaper(s) described in RCW 61.24.040(3), more than seven days before the date fixed for sale in the notice of sale. No other notice of the postponed sale need be given . . . .

Based on this statute, we hold that Wells Fargo had authority to do what it did, unless it and the Vincents had agreed otherwise.[5]

¶8 The Vincents do not claim that they reached an agreement with Wells Fargo or Option One regarding postponement of the sale under RCW 61.24.040(6); indeed, James Vincent expressly declared that he and Option One never discussed that matter while negotiating the October 2001 letter agreement. The Vincents do claim, however, that the October 2001 letter agreement is ambiguous; that it can reasonably be read to mean that Wells Fargo promised to abandon the foreclosure proceeding it had commenced in September 2001 and start a new foreclosure agreement if they again defaulted; and that under *Berg v. Hudesman*,[6] we must adopt that meaning for purposes of this appeal.[7]

¶9 The flaw in this argument is that the October 2001 letter agreement cannot reasonably be read to mean that Wells Fargo was promising to abandon the foreclosure proceeding it had already commenced or that it was promising to start over if the Vincents again defaulted. The agreement plainly provided that "foreclosure proceedings have been initiated," and that if the Vincents failed to comply with the stated conditions, "Option One will proceed with foreclosure proceedings without further notice or de-

---

[5] The statute's plain terms render immaterial the trustee's reliance on "mutual agreement" each time he postponed the sale. Instead of conditioning the trustee's authority to postpone on the presence of an agreement to the contrary, those terms granted the trustee authority to postpone in the absence of agreement to the contrary.

[6] 115 Wn.2d 657, 663, 667-68, 801 P.2d 222 (1990).

[7] *See, e.g., BNC Mortgage, Inc. v. Tax Pros, Inc.*, 111 Wn. App. 238, 250-51, 46 P.3d 812 (2002).

mand."[8] These provisions cannot reasonably be read to have the meaning for which the Vincents now contend; RCW 61.24.040(6) controlled the time of sale; and the trial court did not err by granting summary judgment.[9]

¶10 Wells Fargo requests reasonable attorney fees incurred on appeal.[10] It does not advise us of any statute or contractual provision that might support its request.[11] For the reasons stated by the Supreme Court in *Wilson Court Limited Partnership v. Tony Maroni's, Inc.,*[12] we decline to award fees on appeal.

¶11 We affirm.

QUINN-BRINTNALL, C.J., and BRIDGEWATER, J., concur.

---

[8] CP at 10.

[9] We do not overlook James Vincent's assertions that he *subjectively* "understood" the sale would be cancelled. Washington has "long adhered to the objective manifestation theory of contracts," which means that "unexpressed impressions are meaningless when attempting to ascertain the mutual intentions" of the parties. *Dwelley v. Chesterfield*, 88 Wn.2d 331, 335, 560 P.2d 353 (1977). Vincent does not assert that he ever manifested his subjective understanding to Wells Fargo, so that understanding is not material here.

[10] The trial court awarded Wells Fargo fees and costs below. The Vincents do not challenge that award, and it is affirmed.

[11] Wells Fargo cites generally to chapter 4.84 RCW, but then leaves us to divine the particular section or sections within that chapter.

[12] 134 Wn.2d 692, 710 n.4, 952 P.2d 590 (1998); *see also Phillips Bldg. Co. v. An*, 81 Wn. App. 696, 705, 915 P.2d 1146 (1996).